Bradley, J.
On Hay 6, 1874, Franklin M. Hall was, by the power of attorney of the testatrix of that date, appointed her attorney to manage or work her farm and to transact all her business. He assumed that relation and thereafter, until her death, had the management of all her business affairs; and, on her death, became the executor of her will. She was quite feeble and physically almost helpless during the latter part of her life. And her daughter, .Maria Burrall, during that time, was substantially dependent upon her for support.
And Hall, by the direction of the testatrix, supplied Maria with some means of support and paid some expenses incurred by her for that purpose. The items in his account for moneys paid during the life of the testatrix, on account of Maria’s support, ana some others, for sums paid by him during the same time were not allowed by the surrogate. This furnishes the alleged cause of complaint on his part, and mainly the controversy involved in this review. The executor was charged with the amount of the inventory, $2,539.21, was credited with debts uncollected, $275.50, with property unsold, six dollars, and with funeral and other expenses paid on account of the estate after the death of the testatrix, $176.23. This included the amount of that schedule (C), except $17.75, made up of items for the personal services of the executor which were disallowed. There was also credited to him, for boarding the testatrix eighty-three weeks, $583, for which he charged in his account $674. The evidence on the question of value of this was somewhat conflicting, and the conclusion of the surrogate was fairly supported by the evidence.
The account of the executor for supplies furnished to and for Maria Burrall and expenses incurred in her behalf, after the death of the testatrix, amounting to $673.33, was allowed, except $47.13, consisting of charges for his per7 sonal services and some not proved. He put into his summary of credits, as loss on sales, $281.50, as per his schedule B. This, evidently, was a mistake, and is a repetition of the credit for debts uncollected and property unsold, combined, as appears by reference to that schedule. In his schedule A of proceeds of property sold and receipts of money from all sources he produced the sum of $2,018.47 as the entire fund in his hands. But he has omitted to account for his note of $228, appearing in the inventory. The correction of the mistake before mentioned, and the supply of those omissions with credits for debts uncollected and property sold above referred to added, will make an amount nearly equal to that of the inventory. His schedule of items charged in his account, for expenses incurred and moneys paid before the death of the testatrix, amounted to *481 $626.28, of which $121.28 was allowed, and the rest disallowed. The items not allowed embraced some for moneys paid by him for the support of Maria Burrall, amounting to $207.50, a small amount to or for the testatrix, a small school tax and many other items, some of which were not proved. The payments made for the support of Maria were made within his authority, received from the testatrix, and some of them were conceded to have been made by him. The reason for the disallowance of those charges was probably in the fact that the executor had in his hands the moneys of his principal and was presumed to have used her money for these current expenses. She had a farm of sixty acres, of which he had the management, and received the proceeds as her agent. He also collected money due to her and had the control and use. of that in her behalf.
The surrogate was permitted to find upon the evidence that the executor did not include in his account all the money that came into his hands as her agent during the life of the testatrix, and to conclude that the payments made on her account and in her behalf or by her direction during that time were made from funds in his hands as such attorney or agent. Ordinarily under such circumstances, and in view of such relation, that would be the presumption, unless it in some manner appeared to the contrary. While he accounts for moneys collected and for proceeds of farm produce, the evidence does not require the conclusion that his account, as filed, contained a statement of all he received. And we are inclined to think that in this respect the conclusion of the surrogate was justified. It appears that the executor received from one source $1,883.50, in money, due her; and although some of this was collected by him before the power of attorney was made, it tends to prove that he or the testatrix had the money. And none appears by his account to have been in her possession at the time of her death. If, therefore, she had any at the time he received his powers from that instrument, it through him or otherwise was disposed of. And in view of the relation he then assumed to her and her business, and of her physical condition, it would not be unreasonable to suppose that she surrendered to him the control of whatever means she had, and that he used funds not included in his accounts.-for the support of her and Maria and for other current expenses. It is unnecessary to refer specifically to the items of the account allowed and disallowed by the surrogate. They indicate something of the view taken by him. And we cannot say that he has not properly disposed of the account in view of afi the circumstances.
*482 The executor was called as a witness in his own behalf,, and asked: “Did you furnish groceries, meats, butter and. provisions and articles of dry goods to Maria Burrall charged in schedule D of account, from May 9, 1874, to October 27, 1875 ? The objection taken and sustained was. that the witness was not competent to testify on the subject, and exception followed. This inquiry did not call for personal transactions between the witness and his testatrix.. And the objection as made was not a good one. Lerche v. Brasher, 4 N. Y. St. Rep., 335. But that does not require-a reversal, of the decree if it is seen that no prejudice resulted or could result to the appellant from the exclusion of the evidence so offered. Code Civ. Pro., § 2545; In re Will of Smith, 95 N. Y., 517.
In the view taken of the evidence upon the subject of moneys paid for and goods, furnished to Maria during the life of the testatrix, the introduction of the evidence could not to any extent have changed the result.
The unquestioned payments of moneys for the care and board furnished her during that time were disallowed for the reasons before mentioned, and those charges could not-require or permit the application of any different rule or reason for their disallowance than those which the executor was asked to testify about. And the reason applied to -the disallowance of the former was no less applicable to the-latter, and must, in the view of the surrogate, be deemed to apply to both. And therefore the appellant was not-prejudiced by the exclusion of the evidence offered. Horn v. Pullman, 72 N. Y., 270.
There are a few other items m tne account disallowed, of which complaint is made; but the surrogate having heard the proofs, was able to judge of the force of the evidence, and we are not prepared to say that he was in error in making the disallowance.
The case contains no formal findings of fact or conclusions of law by the surrogate, and no exception to his con elusions in either respect. Code Civ. Pro., § 2739; Angevine Jackson, 103 N. Y., 470 ; 3 N. Y. St. Rep., 643.
The decree should be affirmed.
Smith, P. J., and Haight, J., concur